IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BETTY JONES )
)
    v. )    NO. 3:19-0453
)
TRANE US, INC. )

**TO: Honorable William L. Campbell, Jr., District Judge**

## R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered June 5, 2019 (Docket Entry No. 6), this *pro se* case was referred to the

Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of

the Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending before the Court is Defendant's motion for summary judgment (Docket

Entry No. 31), to which Plaintiff has responded in opposition.  For the reasons set out below, the

undersigned respectfully recommends that the motion be granted in part and denied in part.

## I.  FACTUAL BACKGROUND

Betty Jones ("Plaintiff") filed this *pro se* lawsuit on May 29, 2019, after being terminated in

March 2017 from her job as a management employee for Trane US, Inc. ("Trane") at Trane's

manufacturing plant ("the Plant") in Clarksville, Tennessee. (Docket Entry No. 1.)  Plaintiff

subsequently clarified her allegations and her specific legal claims in an amended complaint. (Docket

Entry No. 14.)  Plaintiff alleges that she suffered employment discrimination on account of her age

and sex, that she was given unequal pay as compared to a male employee, and that she was retaliated

against for making an internal complaint of employment discrimination.[1]  Upon Defendant's filing

---

[1] Although Plaintiff asserted in her original complaint that she had also been discriminated against on account of her race, *see* Complaint at 4, she abandoned this claim in her amended complaint.

of its answer and amended answer, *see* Docket Entry Nos. 8 and 16, scheduling orders were entered providing the parties with a period of time for pretrial activity and discovery in the case. (Docket Entry Nos. 9, 25, and 30.) Defendant's motion for summary judgment is the only pending motion in the case, and a trial date has not yet been scheduled. Neither party has made a demand for a jury trial.[2]

Plaintiff was 58 years old at the time she began working at the Plant in March 2014 as a Senior HR Generalist with a starting annual salary of $70,000.00. As a Senior HR Generalist, Plaintiff's work included a variety of duties related to personnel and labor management at the Plant for both salaried and hourly employees at the Plant, which employs approximately 1,400 employees. The HR Department at the Plant is not a large department and, during the relevant time period, it consisted of the following full time employees: HR Manager John Carl ("Carl") (age 61), HR Manager (on special assignment) Tiya Mukherjee ("Mukherjee") (age 32); Plaintiff; HR Generalist Vincent Kelly ("Kelly") (age 31); HR Administrator Liz Pritts ("Pritts") (age 38). *See* Defendant's Statement of Undisputed Facts (Docket Entry No. 33) at 22, ¶ 98.[3] Aenis Harris ("Harris"), who was, at the time, the HR Director, Integrated Supply Chain, and Paula Nuzzi ("Nuzzi"), an HR Manager from a facility in Indiana, also worked at the Plant during the spring and early summer of 2016, overseeing the HR Department on an interim basis until Carl, who was replacing the prior HR Manager at the Plant, could transfer to the Plant from a Trane facility in Lexington, Kentucky. *Id.* at 4, ¶ 17.

Plaintiff alleges that she worked without issue at the Plant until June 2016 when Carl took over the position of HR Manager at the Plant and became Plaintiff's direct supervisor. She contends that Carl assigned to her tasks that had not been previously assigned to her by the prior HR Manager,

---

[2] Although the docket indicates that Defendant made a jury demand, it does not appear that either party has made a jury demand in this case. *See* Fed.R.Civ.P. 38.

[3] A retired Trane employee, Joan Pulley (age 72) also worked in the HR Department from August 2016 to July 2017, as an HR Specialist, *see* Declaration of Michael Creamer (Docket Entry No. 34-4) at ¶ 6, although she was not employed by Trane but by a staffing agency.

2

Josh Miller ("Miller"), and that these tasks substantially increased her workload. The tasks included performing New Hire Orientations for new hourly employees, tracking "Manpower" hours for hundreds of employees, performing increased administrative support and duties, providing increased employee support, and increasing the length of responses to employee grievances. Plaintiff asserts that many of these tasks had previously been performed by HR Generalists and administrative staff and that the three younger employees in the HR Department were not assigned the volume of tasks that Carl assigned to her. She also contends that Carl directed that she move her desk from the back of the HR Department, where she had privacy to discuss matters with employees, to the front section of the HR Department, which was much busier and where she was responsible for providing assistance to a high volume of employees who came into the department on a daily basis with a variety of questions. She asserts that she was the only HR employee that was directed to move their desk.

On October 13, 2016, Carl and Harris met with Plaintiff to discuss her work and issued to her an "Expectations" document which outlined five specific expectations for Plaintiff:

* Establish credibility with front line supervisors by issuing [a] proper level of discipline in a timely manner
* Establish proper behavior of employees by raising level of expectations and accountability
* Conduct employee discipline/counseling sessions efficiently and effectively
* Perform all aspects of labor relations efficiently and effectively
* Perform all aspects of employee investigations and provide appropriate responses

(Docket Entry No. 34-1 at 44.) Both Plaintiff and Carl signed the document. (*Id*.) The parties differ as to the genesis of the meeting. Plaintiff contends that the meeting occurred only after she spoke to Carl about what she perceived as an increased workload and Carl's expectation of her and after she relayed to Carl a comment that she had heard from a retiring hourly employee that Carl was going to "work her so hard that she would quit." Defendant intimates that the meeting occurred so that Carl and Harris could discuss their observations of Plaintiff's performance and her performance issues, make clear their expectations, and encourage her to improve.

3

On February 13, 2017, Carl again met with Plaintiff, this time to go over her performance evaluation for 2016. Mukherjee was also at the meeting. A written 2016 Performance and Core Competency Review was generated prior to the meeting that included statements from Plaintiff, Carl, and Harris with respect to several work objectives and whether Plaintiff met these objectives. The review form also included a scored Overall Objective Rating of "2.0 - Meets Most" for the achievement of performance objectives and an Overall Competency and Value Rating of 3.0 - Expected Proficiency." (Docket Entry No. 38-2 at 9-16.)[4] As part of her evaluation, Plaintiff asserts that she was to receive an annual pay raise of 1.75%. (Amended Complaint at 8, ¶ 9.)

Two days later, on February 15, 2017, Plaintiff lodged an internal complaint ("the February 2017 Complaint") against Carl with Defendant's ethics help line. She complained about Carl's treatment of her, her year end evaluation, and her pay raise, and she alleged racial, sex, and age discrimination, as well as unequal pay in comparison to her male co-worker, HR Generalist Kelly. (Docket Entry No. 34-1 at 54-57.) After Defendant conducted an investigation into the complaint, including interviews with both Plaintiff and Carl, Defendant informed Plaintiff by e-mail on March 8, 2017, that it found no support for her allegations that she had been treated unfairly or discriminated against because of her gender or race. (*Id*. at 54.) Plaintiff alleges that subsequent to her filing of the February 2017 Complaint, Carl did not make any attempts to address the concerns that she had raised and he began to ostracize her by not communicating with her.

On March 17, 2017, Carl and Mukherjee met with Plaintiff and informed her that she was being terminated from her job. Plaintiff asserts that she was told by Carl that she did not have enough labor experience and she was offered a separation/severance agreement, which she declined to accept. (Amended Complaint at 11, ¶ 14; Docket Entry No. 48 at 33.) Plaintiff then filed an internal complaint about wrongful termination and retaliation, which Defendant found was not supported by facts. (Docket Entry No. 34-1 at 53-54.) Plaintiff thereafter filed a charge of

---

[4] In comparison, as part of her 2016 Performance and Core Competency Review, Plaintiff received an Overall Objective Rating of "3.0 - Meets All" and an Overall Competency and Value Rating of "3.0 - Expected Proficiency." (Docket Entry No. 34-1 at 43.)

discrimination and received a right to sue letter from the Equal Employment Opportunity Commission on April 10, 2019. *See* Complaint at Exhibit 1 (Docket Entry No. 1-1).

Plaintiff asserts that she has been unable to find employment in the human resources field as a result of being terminated from her job with Trane. In her lawsuit she seeks various forms of damages and injunctive relief based upon four claims:

(1) a claim of disparate treatment on account of age brought under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*. ("ADEA") based upon her allegations of the extra work duties assigned to her by Carl, *see* Amended Complaint at 3-5;

(2) a claim of unequal pay brought under the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA") based on the disparity in pay between Plaintiff and a male co-worker, Vincent Kelly, *id*. at 6;

(3) a claim of disparate treatment and unequal pay on account of sex brought under 42 U.S.C. §§ 2000e *et seq*. ("Title VII") based on her allegations that she was given an unequal workload and was not provided with equal pay as compared to a male co-worker, Vincent Kelly., *id*. at 6-7; and

(4) a claim brought under Title VII for retaliation based on her allegations that she was terminated in retaliation for making the February 2017 Complaint. *Id*. at 7.

## II.  MOTION FOR SUMMARY JUDGMENT AND RESPONSE

Defendant seeks summary judgment under Rule 56 of the Federal Rules of Civil Procedure. In support of its motion, Defendant relies on a statement of undisputed material facts (Docket Entry No. 33), a memorandum of law (Docket Entry No. 32), and the following evidentiary materials: 1) excerpts from Plaintiff's deposition transcript (Docket Entry No. 34-1); 2) the declaration of Aenis Harris (Docket Entry No. 38-1); 3) the declaration of John Carl and documents attached thereto (Docket Entry No. 38-2); and, 4) the declaration Michael Creamer, Trane's Human Resources Leader - Integrated Supply Chain (Docket Entry No. 34-4).

Defendant contends that Plaintiff was terminated from her employment for poor work performance, which was first identified by Harris and Nuzzi during their interim management of the

HR Department and which Carl observed after filling the HR Manager position in June 2016. Defendant contends that Plaintiff lacked adequate interpersonal skills, did not respond to or negotiate employee grievances well, created grievance responses that lacked detail, did not fully support supervisors in dealing with employees, exhibited discrepancies in how she conducted internal investigations, had difficulty terminating employees when necessary, had trouble understanding and interpreting the labor contract and had a general lack of necessary union experience, inadequately performed the prep work to handle union contract negotiations, mishandled a situation with a female employee in January 2017, and failed to complete an assignment Carl gave her in January 2017 to make sure supervisors were ready for upcoming changes to the overtime tracking system and knew how to track overtime manually. *See* Declaration of Carl at ¶¶ 7, 8, 19, and 20; Declaration of Harris at ¶ at 7.

Defendant argues that neither Plaintiff's age or gender nor the fact that she filed the February 2017 Complaint played any role in the decision to terminate her employment. Defendant asserts that even though Plaintiff's termination did not occur until March 17, 2017, Carl and Harris made the decision to terminate Plaintiff's employment on February 9, 2017, prior to Plaintiff's February 2017 Complaint. *See* Declaration of Carl at ¶ 21; Declaration of Harris at ¶ at 14. Defendant contends that Plaintiff has no direct evidence supporting her claims of age and sex discrimination or her claim of retaliation, that she cannot set forth sufficient circumstantial evidence supporting a *prima facie* case for these claims, and that, even if Plaintiff were able to show a *prima facie* case for any of the claims, she cannot set forth evidence showing that Defendant's explanation for the challenged conduct was a pretext for unlawful discrimination or retaliation. With respect to Plaintiff's Equal Pay Act claim, Defendant argues that (1) this claim is time barred because it was brought beyond the applicable two year statue of limitations and (2) the pay difference between Plaintiff and Kelly was based on several factors other than sex that justified the pay differential.

In response, Plaintiff argues that numerous factual disputes exist and that her claims should proceed to trial. In support of her response, Plaintiff submits a statement of opposition (Docket

6

Entry No. 39), a memorandum in opposition (Docket Entry No. 40), a lengthy response to Defendant's statement of undisputed facts (Docket Entry No. 41), her own declaration (Docket Entry No. 44), and an appendix of exhibits (Docket Entry Nos. 48 and 49).

Plaintiff contends that there is no real dispute that Carl assigned to her voluminous extra work duties after he assumed the role of HR Manager at the Plant and that these were work duties that were removed from the younger employees in the HR Department and assigned to her. *See* Plaintiff's Memorandum at 14-17. In contrast, she contends that the younger employees were not assigned an equal volume of new tasks. *Id*. She also contends that there is no real dispute that Kelly was paid more than her, despite being a HR Generalist and not a Senior HR Generalist, and that he was given less work responsibilities in the HR Department despite having a higher salary than both Plaintiff and the female HR Generalist that he replaced and that many of his duties were reassigned to female employees. *Id*. at 10-14 and 18. She contends that none of the factors set forth by Defendants in support of their explanation as to why Kelly was paid more than Plaintiff are valid reasons that justify the pay disparity. *Id*.

With respect to her termination, Plaintiff disputes the validity of Defendant's explanation for the termination and contests, in great detail, the factual accuracy of the asserted work performance issues upon which Defendant relies as the justification for her termination. *Id*. at 6-10. She further points out that Defendant's assertion that her work performance was so poor that it justified her termination is belied by the undisputed fact that she had just had a job performance review in February 2017 from Carl and Harris that did not reflect sub-standard performance grades and that did not indicate anything about losing her job. She further contends that the job performance review actually indicated that she was meeting expected proficiency, resulted in a pay increase, and contained numerous positive comments from both Carl and Harris that are inconsistent with what they now contend was their significant dissatisfaction with Plaintiff's job performance. Additionally, Plaintiff points out that, despite Defendant's contention that she had numerous workplace performance deficiencies: (1) she had never received any disciplinary or corrective actions or other

7

workplace reprimands; (2) she had not been placed on a Performance Improvement Plan ("PIP"), which is part of the continuum of the performance counseling policy for employees at Trane; and, (3) other than the October 2016 meeting about the Expectations document, a meeting which Plaintiff contends arose because of her own questions to Carl about her job, Carl never discussed with her any dissatisfaction with her work performance or a need to improve her work performance, let alone that she was in danger of losing her job. Plaintiff further points out that the EEOC investigation into her charge of discrimination led to a determination that Defendant discharged Plaintiff in retaliation for making the February 2017 Complaint. *See* Docket Entry No. 48 at 55-57.

In a reply, Defendant first contends that Plaintiff fails to support her response in opposition with admissible evidence and that, although Plaintiff disputes the majority of Defendant's statements of undisputed facts, she relies upon her own unsworn and conclusory statements, hearsay, and unauthenticated documents or she misrepresents and misconstrues the content and context of the supporting evidence that Defendant has placed into the record. *See* Docket Entry No. 43. Defendant further argues that Plaintiff's response fails to establish a *prima facie* case supporting any of her claims, much less shows that Defendant's proffered explanations for the challenged conduct is a pretext for discrimination or retaliation. *Id*.[5]

### III.  STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The

---

[5] Defendant's motion to strike Plaintiff's declaration as improperly filed and insufficient was denied by the Court. *See* Order entered February 27, 2020 (Docket Entry No. 47).

8

moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id*. Ultimately, the moving party has the burden of showing the absence of genuine factual disputes from which a reasonable trier of fact could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In evaluating a motion for summary judgment, the Court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson*, 477 U.S. at 249. Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id*. The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence from which the trier of fact could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## IV. ANALYSIS

### A. Plaintiff's *pro se* Response

As an initial matter, the Court is unpersuaded by the argument set forth in Defendant's reply that hinges upon the deficiencies of the *pro se* Plaintiff's response to the motion for summary judgment. While Defendant correctly points out that Plaintiff's *pro se* status does not relieve her of the basic obligation to respond directly to the motion for summary judgment and to show that genuine issues of material fact exist which require that the action proceed to trial, it is apparent that the *pro se* Plaintiff has made an admirable attempt to directly respond to both Defendant's arguments for summary judgment and Defendant's statement of undisputed facts, to point out what she believes are the disputed facts, and to present to the Court in an organized manner the evidence that she

9

believes supports her claims. Unlike some *pro se* cases, Plaintiff has not made a minimal effort to respond or left it to the Court to make her case for her.

The Court simply does not agree with Defendant's contention that Plaintiff's opposition fails because Plaintiff has "wholly failed" to set forth admissible evidence in support of her case and raises a genuine issue for trial. *See* Reply at 2. To be sure, Plaintiff's response in opposition and specifically, her response to Defendant's statement of undisputed facts, does rely to some degree upon hearsay evidence and upon statements from her that are speculative, conclusory, or beyond the scope of her own personal knowledge.[6] Such evidence cannot be relied upon to rebut the arguments for summary judgment, and the Court is able to parse out this type of evidence.

At the same time, many of the events at issue, the documents Plaintiff has submitted as exhibits, and many of the disputed facts that she points to are events, documents, and facts about which Plaintiff has direct personal knowledge. Indeed, her deposition reflects such knowledge. Further, Plaintiff has submitted her declaration attesting to the correctness of the statements that she has made in her response. While this type of prophylactic or remedial declaration would normally be discounted by the Court, it is nonetheless clear that a great many of the factual statements upon which Plaintiff relies for her response in opposition and about which she has personal knowledge could readily be set out in an acceptable form and are statements about matters that certainly could be testified to by Plaintiff. The Court is not inclined in this case to wholly disregard such statements in the context of review of the motion for summary judgment. *See Thomas v. Haslam*, 303 F. Supp.3d 585, 624 (M.D.Tenn. 2018) (Trauger, J.) (acknowledging the court's discretion to consider the substance of material presented in opposition to summary judgement, even if inadmissible in the form presented, if such material could be presented in an admissible form at trial); *Mangum v. Repp*, 2017 WL 57792 at * 5 (6th Cir. Jan. 5, 2017). Plaintiff's claims should rise or fall based upon the

---

[6] Plaintiff's response to the statement of undisputed facts is 99 pages long, *see* Docket Entry No. 41, and the Court sees no purpose is detailing or setting out the instances when Plaintiff has relied upon evidence that cannot be considered.

10

merits of the claims, and the Court is reluctant to place form over substance by essentially disregarding Plaintiff's good faith effort to support her case as best she is able as a layperson.

## B. ADEA and Title VII

The ADEA makes it unlawful for an employer "to discharge ... or otherwise discriminate against any individual ... with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Title VII likewise makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

A plaintiff may attempt to prove a case of discrimination by setting forth direct evidence of discrimination. Direct evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's challenged actions. *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Direct evidence of discrimination "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). "Evidence of discrimination is not considered direct evidence unless [an unlawful] motivation is explicitly expressed." *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006).

In the absence of direct evidence of discrimination, a plaintiff bringing a claim under either the ADEA or Title VII must proceed using the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under this framework, the plaintiff first has the burden of proving a *prima facie* case of discrimination based upon the particular facts of the events at issue; if plaintiff is successful in showing a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged conduct. *Id.*

11

Finally, the plaintiff bears the burden of proving that the employer's justification is actually a pretext for discrimination. *Id.*

The ultimate showing that must be made by a plaintiff to prevail on a discrimination claim differs under the ADEA and Title VII. Under the ADEA, the plaintiff must ultimately show that the employer's challenged conduct would not have been taken 'but-for' the plaintiff' age. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). However, under Title VII, the plaintiff must ultimately show that the suspect classification was merely a motivating factor in the employer's challenged conduct. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012).

In addition to protecting against discrimination, Title VII also make it unlawful for an employer to retaliate against an employee because the employee has opposed any practice made unlawful by those statutes. 42 U.S.C. § 2000e-3(a).

C. Equal Pay Act

The Equal Pay Act ("EPA") sets a baseline rule that no covered employer "shall discriminate...between employees on the basis of sex by paying wages to employees...at a rate less than the rate at which he pays wages to employees of the opposite sex...for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). That general rule, however, comes with an important statutory exception that an employer may raise as an affirmative defense, namely that a difference in pay between otherwise qualifying employees of opposite sexes is permissible "where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Id. See Murphy v. Ohio State Univ.*, 549 Fed.App'x 315, 318 (6th Cir. 2013); *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 826 (6th Cir. 2000).

"To establish a *prima facie* case for an EPA claim, a plaintiff must show that an employer paid different wages to an employee of the opposite sex for substantially equal work." *Crowder v.*

12

*Railcrew Xpress*, 557 Fed.App'x 487, 494 (6th Cir. 2014) (quoting *Kovacevich*, 224 F.3d at 826). Once a plaintiff has proven a *prima facie* case, the burden shifts to the employer to prove that the wage differential is justified under one of the four factors supporting the statutorily provided exception. *Schleicher v. Preferred Solutions, Inc.*, 831 F.3d 746, 752 (6th Cir. 2016). Unlike the burden shifting analysis used for a claim brought under Title VII, at this stage of the analysis for an EPA claim, an employer bears "both the burden of persuasion and production" of establishing an affirmative defense. *Perkins v. Rock-Tenn Servs., Inc.*, 700 Fed.App'x 452, 457 (6th Cir. 2017); *Beck–Wilson v. Principi*, 441 F.3d 353, 364-65 (6th Cir. 2006); *Buntin v. Breathitt Cty. Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998). If the employer meets this burden, the plaintiff must come forward with evidence demonstrating the existence of a triable issue of fact regarding pretext. *Schleicher*, 831 F.3d at 752; *Mallory v. Caterpillar Fin. Servs. Corp.*, 256 F.Supp.3d 770, 781 (M.D.Tenn. 2017).

## D. Age Discrimination Claim Based Upon the Workload Assigned to Plaintiff (Claim 1)

Plaintiff alleges that she suffered age discrimination because of disparate treatment when (1) Carl assigned to her a number of extra and time consuming work duties that she had not performed under her prior HR Manager and (2) Carl moved her desk to a different location in the HR Department that was a much busier and more disruptive location. *See* Claim 1, Amended Complaint at 3-5.[7] The Court finds that summary judgment should be granted to Defendant on this claim because Plaintiff fails to offer sufficient evidence supporting her *prima facie* case of age discrimination.

Plaintiff does not have direct evidence supporting her ADEA claim. Plaintiff points to two comments that were made by employees at the Plant. The first comment was from an employee who

---

[7] Although Defendant views Plaintiff as also asserting an ADEA claim based upon her termination, Plaintiff's complaint clearly and specifically (1) sets out disparate treatment as her only claim brought under the ADEA and (2) links her termination only to a claim of retaliation. *See* Amended Complaint at 3-15. Accordingly, the Court analyzes only the ADEA claim that has actually been pled by Plaintiff in her complaint.

13

told Plaintiff that "Plaintiff needs to watch her back." The second comment was from a retiring employee who stated "word on the floor is that your new HR manager is going to work you so hard that you'll quit." For several reasons, these comments do not support a claim based on direct evidence of age discrimination. First, as an evidentiary matter, the comments are hearsay that do not constitute admissible evidence. Second, the comments are not comments that are actually attributable to Carl, but appear to be merely the opinions or speculation of workers at the Plant. Finally, neither comment specifically refers to either Plaintiff's age or an age-related animus, and both comments require multiple inferences to support a conclusion that Carl's challenged conduct was motivated by a desire to discriminate against Plaintiff on account of her age. Accordingly, Plaintiff's ADEA claim must proceed through the burden-shifting analysis.

Generally, to establish a *prima facie* claim of age discrimination, plaintiff must show that he or she was: 1) at least 40 years old at the time of the alleged discrimination; 2) subjected to an adverse employment action because of the plaintiff's age; 3) otherwise qualified for the job at issue; and, 4) the plaintiff was replaced by someone outside the protected class or was treated differently than similarly situated individuals. *See Laws v. HealthSouth N. Ky. Rehab. Hosp. Ltd. P'Ship*, 508 Fed.App'x. 404, 410-11 (6th Cir. 2012); *Harris v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010). A plaintiff's failure to satisfy a *prima facie* case warrants dismissal of the claim.

While Defendant focuses the bulk of its argument regarding the *prima facie* case on arguing that Plaintiff cannot satisfy the third and fourth elements of the required showing and offers a brief argument as to the adverse employment action requirement, *see* Defendant's Memorandum at 14-15, the Court finds that Plaintiff is unable to satisfy the second element of her *prima facie* case and this failure, standing alone, requires dismissal of the claim.

The necessity of showing a material adverse employment action is to prevent lawsuits that are based upon general workplace dissatisfactions. *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004), *aff'd Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

14

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761(1998); *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014). The challenged employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885-86 (6th Cir. 1996).

Based on the evidence that is before the Court, there is no evidence that supports a reasonable conclusion that the actions complained about by Plaintiff constituted an adverse employment action that would support a claim under the ADEA. As the Sixth Circuit Court of Appeals has explained, "[n]ot every act affecting an individual's employment can be considered an adverse employment action." *McMillian v. Potter*, 2005 WL 1140629 at *3 (6th Cir. May 11, 2005) (citing *Burlington Indus.*, 524 U.S. at 761). Carl's act of directing that Plaintiff's desk be moved to another location in the HR Department's office is simply not a significant change in employment status. With respect to Plaintiff's complaint about being assigned additional work duties that she had not previously been required to perform, a supervisor's act of assigning extra duties to an employee is generally the type of workplace activity that falls outside the scope of a materially adverse change in employment status. *See Bronson v. Henry Ford Health Sys.*, 2016 WL 4701478 at *4 (E.D.Mich. Sept. 8, 2016) (assignment of extra work did not constitute adverse action); *Ortiz v. Hershey Co.*, 2013 WL 5538657 at *9 (W.D.Tenn. Oct. 7, 2013), *aff'd*, 580 Fed.App'x 352 (6th Cir. 2014) (inequitable assignment of job duties to plaintiff was not sufficient to show adverse employment action); *Blackburn v. Shelby Cty.*, 770 F.Supp. 2d 896, 922 (W.D.Tenn. 2011) (a plaintiff's increased case load and job responsibilities were not actionable as adverse employment actions); *Jacox v. Cincinnati Pub. Sch.*, 2007 WL 2156650 at *5 (S.D.Ohio July 26, 2007) ("Surely asking any employee to work longer hours or perform additional tasks may impose a burden on that employee. But additional work tasks alone are insufficient to establish material adversity."). The extra work duties at issue in this case were within the scope of the type of duties performed by human resource

15

employees and were, in fact, duties performed by the HR Department at the Plant. Plaintiff may have subjectively viewed these actions as unfair or unwarranted, but her subjective outlook on them is not determinative on the issue. In the end, the challenged actions of Carl that form the basis of Plaintiff's claim do not constitute actionable conduct under the ADEA.

Additionally, as argued by Defendant, the Court finds that Plaintiff has set forth insufficient evidence to show that she was treated differently than the younger employees in the HR Department. While Plaintiff has set forth evidence of the workload that she was given by Carl, she has not provided evidence of the workload that Carl assigned to the younger HR employees, let alone that the workload of the younger employees was significantly different or more favorable than her workload. Although Plaintiff states that she "was aware" of the workload of the other HR employees, she admits that she did not know every assignment given to the other HR employees by Carl. Her supposition about the comparative workloads of the employees in the HR Department does not constitute evidence supporting this element of her *prima facie* case.[8] Defendant is therefore entitled to summary judgment on this claim.


E. Equal Pay Act Claim (Claim 2)

Plaintiff alleges that she was paid less than Kelly, a male co-worker, for equal or greater work in violation of the EPA. With respect to this claim, the following facts are undisputed: (1) Plaintiff was hired as a Senior HR Generalist at a annual salary of $70,000.00; (2) Plaintiff was paid an annual salary of $76,399.00 at the time of her termination; and, (3) Kelly was hired as an HR Generalist at the Plant in June 2017 at an annual salary of $85,000.00. *See* Defendant's Statement of Undisputed Facts at 20, ¶ 90; Plaintiff's Response to Statement of Undisputed Facts at 77-78 ¶ 90. Additionally, it is undisputed that Plaintiff received her final paycheck from Defendant on March 31, 2017, and that she filed the instant lawsuit on May 29, 2019. *See* Defendant's Statement of

_____

[8] Because Plaintiff's failure to satisfy the second and fourth elements of her *prima facie* case renders this claim subject to dismissal, the Court does not address Defendant's alternative arguments for dismissal that are based on the third element of the *prima facie* case or the pretext showing.

16

Undisputed Facts at 20, ¶¶ 86 and 87; Plaintiff's Response to Statement of Undisputed Facts at 76, ¶¶ 86 and 87.

The Court agrees with Defendant's argument that Plaintiff's EPA claim was untimely filed and is barred by the statute of limitations. The general statute of limitations for an EPA claim is two years. *See Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 830 (6th Cir. 2019); 29 U.S.C. § 255(a). In the instant case, Plaintiff's EPA claim of unequal pay accrued when she received her last paycheck from Defendant on March 31, 2017. *Conner v. West*, 56 Fed.App'x 229, 231 (6th Cir. 2003). Because her lawsuit was filed more than two years after she received her last paycheck, her EPA claim is presumptively untimely.

Plaintiff's arguments in rebuttal are unpersuasive. Plaintiff first argues that her February 2017 Complaint and her March 23, 2017, charge of discrimination to the EEOC both occurred within the two year statute of limitations. *See* Plaintiff's Response (Docket Entry No. 40) at 17-18. However, neither the filing of an informal complaint nor the filing of an EEOC charge of discrimination constitutes the filing of a legal claim for the purposes of the statute of limitations. Plaintiff then argues that her lawsuit was filed within two years after she received her right-to-sue letter from the EEOC on April 5, 2019. *Id*. at 18. However, there is no requirement that administrative remedies be exhausted under the EPA through the filing of a charge of discrimination with the EEOC. *See Washington v. Gunther*, 452 U.S. 161, 175 n.14 (1981). Plaintiff was free to file suit upon her EPA claim before, or even during, the pendency of the EEOC proceedings, and the filing of her charge of discrimination with the EEOC does not toll the statute of limitations for a claim under the EPA. *See Gehrt v. Univ. of Illinois at Urbana-Champaign Co-op. Extension Serv.*, 974 F.Supp. 1178, 1189 (C.D.Ill. 1997); *Melanson v. Rantoul*, 536 F.Supp. 271, 285 (D.R.I. 1982).

Plaintiff finally argues that she should be entitled to application of the three-year statute of limitations that is provided for willful violations of the EPA. *See* Plaintiff's Response at 18. While the EPA does provide for an extended three year limitations period for claims based upon willful violations of the EPA, *Logan*, *supra*, a claim of a willful violation must be based upon proof that

17

"the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . ." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (U.S. 1988) (analyzing 29 U.S.C. § 255(a) in context of claim brought under the Fair Labor Standards Act). Plaintiff offers no real proof as to the existence of a willful violation other than the fact that a pay disparity existed and that Defendant was aware that it was paying Plaintiff and Kelly differing wages. However, for a claim to fall into the category of a willful violation there must be something more than proof of merely a violation of the EPA. *Id*. at 132 ("The fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations."). While Plaintiff disputes Defendant's asserted justifications for the salary differential, her disputes, even if accepted, go to the merits of the underlying EPA claim and not to the issue of willfulness. Plaintiff has the burden of persuasion to show willfulness. *Id*. at 135; *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018); *Brooks v. Tire Discounters, Inc.*, 2018 WL 1243444 at *7 (M.D.Tenn. Mar. 8, 2018) (Trauger, J.) (analyzing willfulness in context of FLSA claim). The Court finds that she has simply not met this burden and that her EPA claim is barred by the statute of limitations.

F. Discrimination Claim under Title VII (Claim 3)

Plaintiff's Title VII claim is that she suffered disparate treatment and unequal pay on account of sex because of the unequal workload that Carl assigned to her and because of unequal pay as compared to a male co-worker, Vincent Kelly. *See* Claim 3, Amended Complaint at 6-7.[9] Defendant is entitled to summary judgment on this claim.

_____

[9] Although Defendant views Plaintiff as also asserting a Title VII claim of sex discrimination based upon her termination, Plaintiff's complaint clearly and specifically (1) sets her Title VII sex discrimination claim only in terms of disparate treatment and unequal pay and (2) links her termination only to a claim of retaliation. *See* Amended Complaint at 3-15. Accordingly, the Court analyzes only the Title VII claim that has actually been pled by Plaintiff in her complaint.

18

In the same manner as her ADEA claim, Plaintiff has offered no direct evidence supporting her Title VII claim. Accordingly, she must proceed on this claim under the burden-shifting analysis. Generally, to establish a *prima facie* case of discrimination on the basis of sex, the plaintiff must show that: (1) she is a member of the protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than similarly situated non-protected employees. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016).

The Court's analysis of Plaintiff's ADEA claim with respect to inability to show that she suffered a materially adverse employment action because of the workload assigned to her by Carl applies as equally to her Title VII claim and warrants dismissal of the claim. Likewise, Plaintiff's failure to set forth actual evidence of the workload that Carl assigned to Kelly as compared to the workload assigned to her by Carl renders her unable to satisfy the fourth element of her *prima facie* case for her sex discrimination claim. She simply has not set forth sufficient evidence that she was treated less favorably than Kelly with respect to the workload assigned to them by Carl.

With respect to her Title VII claim that she suffered discrimination on account of sex due to the pay disparity between herself and Kelly, the Sixth Circuit has held that a defendant for a Title VII claim based upon wage discrimination may avoid liability if it can establish one or more of the four affirmative defenses that are set out in the EPA and that would be relevant were the claim to be brought under the EPA. *Beck-Wilson v. Principi*, 441 F.3d 353, 369 (6th Cir. 2006); *Odomes v. Nucare, Inc.*, 653 F.2d 246, 251 (6th Cir. 1981).

In support of its argument that it acted lawfully by paying Kelly more than Plaintiff, Defendant argues that it relied on factors "other than sex" in determining Kelly's salary and sets forth the following factors as those which it relied on and those which justified the pay differential:

1) Kelly had a master's in business administration with an HR management focus (Plaintiff did not);

2) Kelly had worked in the company's corporate HR office since 2012 and had developed valuable (and transferable) knowledge, experience and relationships (Plaintiff had only been employed since 2014 and had no such corporate experience);

19

3) During his employment, Harris identified Kelly as a consistently high performer with great growth and development potential (Harris identified Plaintiff aslow performer);

4) At the time Kelly was hired, he was already earning $77,976.15 as a Global HR Value Stream Change Agent – Project Lead in the company's corporate HR office;

5) Kelly was not willing to relocate without a satisfactory pay increase and initially turned down a lower salary offer and negotiated the $85,000 salary;

6) Several timing factors aligned to justify paying the salary Kelly required – Kelly had reached the point in his career that he needed plant experience to further develop with Trane, the Clarksville plant had an opening, and Kelly was willing to relocate to Tennessee.

*See* Defendant's Memorandum, Docket Entry No. 32, at 22.

"The "factor other than sex" defense does not encompass all other factors—at a minimum, it must be a factor that was adopted for a legitimate business reason." *Perkins v. Rock-Tenn Servs., Inc.*, 700 Fed.App'x 452, 457 (6th Cir. 2017) (*quoting E.E.O.C. v. J.C. Penney Co.*, 843 F.2d 249, 253 (6th Cir. 1988)). Of the factors asserted by Defendant, Kelly's educational experience, his work history with Defendant, his prior salary, and his requested salary are all factors which have been found to be the type of factors "other than sex" which justify a salary differential. *Perkins*, 700 Fed.App'x at 457 (length of tenure at employer is valid factor); *Mallison v. Haworth, Inc.*, 488 Fed.App'x 88, 91 (6th Cir. 2012) (industry-related experience is a valid factor); *Balmer v. HCA, Inc.*, 423 F.3d 606, 612 (6th Cir. 2005), *abrogated on other grounds by Fox v. Vice*, 563 U.S. 826 (2011) (experience, prior salary, and educational background are valid factors); *Ambrose v. Summit Polymers, Inc.*, 172 Fed.App'x 103, 107 (6th Cir. 2006) (experience and prior salary are valid factors); *E.E.O.C. v. Home Depot U.S.A., Inc.*, 2009 WL 395835 at *10 (N.D.Ohio Feb. 17, 2009) (a negotiated higher starting salary was a factor "other than sex" which justified a salary differential).

Defendant's explanation of these reasons satisfies its burden of offering legitimate, non-discriminatory reasons for its decision to pay Kelly more than Plaintiff. At this point, for Plaintiff to move her Title VII claim forward she must set forth evidence upon which a reasonable trier of fact could infer that Defendant's reasons were a pretext for sex discrimination. *See Beck-Wilson*, 441

20

F.3d at 360 (noting differences in the burden shifting analysis for unequal pay claims brought under Title VII and brought under the EPA); *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 n.6 (6th Cir.1998) (same); *Palmeri v. Goodwill Indus. of Middle Tennessee*, 2018 WL 4030571 at *10, n.4 (M.D.Tenn. Aug. 23, 2018) (Trauger, J.) (same).

"An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir.1998). The Court finds that Plaintiff fails to satisfy this burden. Plaintiff sets forth her views as to why the proffered reasons should not have warranted the pay differential, but she fails to offer any evidence that these reasons had no basis in fact, did not actually motivate the salary differential, or were insufficient to motivate the decision to pay Kelly more than Plaintiff. Plaintiff's disagreement with the importance or weight that Defendant placed on these factors is simply not evidence showing pretext that can avoid summary judgment in favor of Defendant on this claim.

## G. Retaliatory Termination Claim under Title VII (Claim 4)

Plaintiff alleges that she was terminated from her employment after filing her February 15, 2017 Complaint in which she alleged that she has been subjected to various forms of workplace discrimination. *See* Claim 4, Amended Complaint at 7-12. The Court finds that summary judgment should be denied on this claim because genuine issues of material fact exist on the claim that require resolution at trial.

Title VII prohibits employers from retaliating against employees who oppose an unlawful employment practice. 42 U.S.C. § 2000e-3(a). Because Plaintiff offers no direct evidence of retaliation by Defendant, the Court considers her claim under the *McDonnell Douglas* burden shifting framework. *Kenney v. Aspen Tech., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020); *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). To establish a *prima facie* case of retaliation, Plaintiff must show: (1) she engaged in activity protected by Title VII; (2) the exercise of her protected rights

21

was known to Defendant; (3) Defendant thereafter took an action that was materially adverse to Plaintiff; and, (4) Plaintiff's protected activity was the but-for cause of the adverse employment action. *Kenney*, 965 F.3d at 448. If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to provide a legitimate, nondiscriminatory reason for its actions. *Id.* If Defendant satisfies this burden, the burden shifts back to Plaintiff to demonstrate that the proffered reason was a mere pretext for retaliation. *Id.*

Defendant concedes that Plaintiff can establish the first two prongs of her *prima facie* case of retaliation, and the Court agrees that these prongs are easily satisfied based upon the facts at hand. Defendant contests Plaintiff's ability to satisfy the third and fourth prongs of the *prima facie* case. As to the third prong, Defendant argues that the decision to terminate Plaintiff was made by Carl and Harris on or about February 9, 2017, prior to Plaintiff's February 15, 2017 Complaint and, thus, they did not have knowledge of Plaintiff's protected activity at the time they made the decision to terminate Plaintiff's employment even though the termination did not actually occur until March 17, 2017. *See* Defendant's Memorandum at 24. Defendant's argument as to the fourth prong of the *prima facie* case essentially dovetails with its argument as to the third prong. Defendant contends that Plaintiff cannot show the causation element of her *prima facie* case in light of Defendant's evidence that it was only its formal implementation of the decision to terminate that caused the adverse action to occur after Plaintiff's protected activity. *Id.* at 24 25. Defendant asserts that Plaintiff cannot rely upon the close temporal proximity of the protected activity on February 15, 2027, and her termination on March 17, 2017, because the termination decision had already been made prior to the protected activity occurring.

In support of this argument, Defendant asserts that Carl came to the decision that Plaintiff's employment should be terminated at some point in early February after he was unsatisfied with her work on the overtime tracking task that he had assigned to her and he communicated this decision to Harris, who agreed, and the decision to terminate Plaintiff was finalized on or before February 9, 2017. *See* Declaration of Carl at ¶ 21. Defendant contends that, although the termination decision

22

was made then, Carl and Harris concluded that Defendant was not in a position to act on the decision immediately because Defendant was in the midst of the labor contract negotiation and there was HR work that needed to be done in that respect and they decided to wait until early March to move forward with the termination. *Id*. *See* Declaration of Harris at ¶ 14.

The Court is unpersuaded by Defendant's arguments that a *prima facie* case has not been met. First, the Court notes that "the burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). The third factor of the *prima facie* case sets out a relatively bright line test and merely requires a Plaintiff to show that she suffered an adverse action *after* she engaged in protected activity. Defendant's position that Plaintiff must instead show that the decision-making process that led to the actual adverse action occurred after she engaged in protected activity imposes more than what is required as to this factor. Further, the Court finds that Defendant's argument essentially requires a credibility determination as to when the decision to terminate Plaintiff was made. A reasonable trier of fact could reject Defendant's evidence given the undisputed facts that (i) Plaintiff was kept on as an employee for over a month after Carl and Harris assert they decided that her work performance was so poor that she should lose her job and (ii) Plaintiff received a year-end performance evaluation within days after Carl and Harris decided to terminate her employment that indicated that she was meeting expectations, included positive comments, did not suggest that she was at risk of losing her job, and actually led to a salary increase.

Second, the Court finds that the causal element of the *prima facie* case has been met by Plaintiff. To establish a causal connection, Plaintiff must produce sufficient evidence from which a reasonable inference could be drawn that Defendant would not have terminated her had she not engaged in activity protected. *Taylor*, 703 F.3d at 339. Again, "[t]he burden of proof at the *prima facie* stage is 'minimal'; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the protected activity and the retaliatory action." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009). Although not dispositive

of the issue, the close temporal proximity between Plaintiff's protected activity on February 17, 2017, and her termination on March 17, 2017, is relevant evidence supporting a finding of causation. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.") *See Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004); *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 364 (6th Cir. 2001); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Additionally, the Court finds there is also other evidence, which viewed in the light most favorable to Plaintiff, reasonably supports an inference of causation. Namely, that Plaintiff received a year end performance evaluation only a month prior to her termination, *and after Carl and Harris assert that they made the decision to terminate Plaintiff's employment*, which indicated she was meeting expectations, included positive comments, did not suggest that she was at risk of losing her job, and actually led to a salary increase. Given this evaluation, it would be reasonable to infer that there were not work performance issues with Plaintiff that necessitated her termination but that the termination occurred solely because she engaged in protected activity. Although Defendant offers an explanation that the evaluation was written prior to the end of 2016 and thus was not reflective of how Carl and Harris viewed Plaintiff's work performance in February 2017, the Court finds that this explanation merely raises a genuine issue of material fact on the issue.

With Plaintiff's *prima facie* case established, the burden shifts to Defendant to offer a non-retaliatory reason for its decision to terminate Plaintiff's employment. Defendant has met this burden with its explanation that Plaintiff's poor work performance was the reason for her termination.

The burden then shifts to Plaintiff to demonstrate that the reasons given were "mere pretext." *Kenney*, 965 F.3d at 448. Pretext can be established by showing that the proffered reason was factually false, did not actually motivate discharge, or was insufficient to motivate discharge. *Tingle*

24

*v. Arbors at Hillard*, 692 F.3d 523, 530 (6th Cir. 2012). Courts have recognized that in retaliation cases, an employer's true motivations are particularly difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition by summary judgment. *Singfield*, 389 F.3d at 564. "[C]aution should be exercised in granting summary judgment once a plaintiff has established a *prima facie* inference of retaliation through direct or circumstantial evidence." *Id*; *See also U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983) (acknowledging that discrimination cases present difficult issues for triers of fact because there is rarely "'eyewitness' testimony as to the employer's mental process."). "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, [the] *prima facie* case is sufficient to support an inference of discrimination at trial." *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 508 (6th Cir. 2014) (*citation omitted*). As the Sixth Circuit has stated, "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (*citing Chen v. Dow Chem. Co.*, 580 U.S. 394, 400 n.4 (6th Cir. 2014)).

After review of the record before the Court, the Court finds that genuine issues of material fact exist on the issue of pretext that cannot be resolved in the context of summary judgment. Plaintiff's response in opposition offers a rebuttal to the factual reasons offered as support for Defendant's assertion of poor work performance. While Plaintiff's subjective outlook on her work performance is not sufficient evidence on the issue of pretext, her response painstakingly details a countering factual version of the work issues noted by Defendant, the adoption or rejection of which is better resolved at trial.

Furthermore, and more significantly, as noted in the prior discussion of Plaintiff's *prima facie* case, genuine issues of material fact exist surrounding the events occurring in 2017 that preceded Plaintiff's termination from employment. These factual issues go directly to the question of whether Plaintiff's alleged work performance issues actually motivated the decision to terminate Plaintiff's

employment. For example, as noted, the issue of whether or not Carl and Harris actually made the decision to terminate Plaintiff on February 9, 2017, requires a credibility determination given the facts of this case. Also as noted, the issue of how Plaintiff's performance evaluation should be viewed and whether it is inconsistent with Plaintiff's subsequent termination is subject to differing interpretations and is relevant. *See Henry v. Abbott Labs.*, 651 Fed.App'x 494, 502 (6th Cir. 2016) (finding recent positive reviews of an employee's performance to be evidence of pretext in failure-to-promote claim); *Bruce v. Levy Premium Foodservices Ltd. P'ship of Tennessee*, 324 F.Supp.3d 962, 970 (M.D.Tenn. 2018) (proffered reasons for firing employee that were inconsistent with recent positive performance evaluations was evidence that could be relied on to show pretext). Further, while Defendant points to two significant workplace issues by Plaintiff that occurred in January and February 2017, and which Defendant asserts precipitated the decision to terminate Plaintiff's employment, a reasonable trier of fact could discount this evidence given that there is no indication that the events were discussed with Plaintiff during her performance evaluation meeting with Carl in February 2017.

Because there is evidence upon which a reasonable trier of fact could reject Defendant's proffered explanation for the termination decision and find that Defendant's actual motivation for terminating Plaintiff was a retaliatory animus, Defendant's reliance upon the "honest belief" defense necessarily fails to warrant summary judgment in its favor. Plaintiff challenges not just the factual basis or correctness of Defendant's explanation of her deficient work performance. Plaintiff also challenges that her termination was actually based on work performance issues, contending that the evidence can reasonably be construed as casting doubt that she was fired for work performance related issues. While the "honest belief" rule protects an employer who mistakenly, but honestly, relies on legitimate non-discriminatory reasons for a challenged action, it does not protect an employer when the plaintiff shows that the challenged adverse action was not actually motivated by the proffered reasons. *Bruce* 324 F.Supp.3d at 971.

26

When the totality of the evidence is viewed in the light most favorable to Plaintiff and she is given the benefit of all reasonable inferences, the Court cannot say that the evidence on the issue of retaliation is so one-sided that Defendant is entitled to judgment in its favor as a matter of law. A reasonable trier of fact could find Defendant' version of the events and proffered explanation to be credible and supportive of a judgment in its favor. On the other hand, a reasonable trier of fact could find Defendant's explanation to be unworthy of belief and find that Plaintiff was terminated not for work performance issues but as retaliation because she engaged in protected activity by lodging a complaint of discrimination against Carl, her supervisor. In the end, this claim is best resolved by the trier of fact.

## RECOMMENDATION

For the reasons set out above, it is respectfully RECOMMENDED that:

1) Defendant Trane US, Inc.'s motion for summary judgment (Docket Entry No. 31) be GRANTED as to all claims in this case other than Plaintiff's claim for a retaliatory termination in violation of Title VII; and,

2) Plaintiff's retaliatory termination claim be set for trial.

If the Recommendation is adopted, the Court further RECOMMENDS that the Court consider the appointment of counsel to Plaintiff from the Civil Appointments Panel for the purposes of conducting the trial and pretrial matters related to trial.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v.*

*Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge